ALMON, Justice.
Gregory Thaddeus Koppersmith was convicted of reckless manslaughter in connection with the death of his wife. The Court of Criminal Appeals affirmed his conviction, with an unpublished memorandum. Koppersmith v. State, 689 So.2d 1015 (Ala.Crim.App.1996) (table). We granted certiorari review to determine whether the circuit court erred in sustaining the objection of the prosecution to certain testimony offered by the defendant during his direct examination. During the presentation of the defendant’s own testimony on direct examination, the following exchange occurred:
“Q. [Defendant’s counsel] What was your intent as you shook her?
“A. [Defendant] To calm her down.
“Q. Was your intent to beat her head on the bricks?
“A. No, it was not.
“MS. MURPHEE: Judge, I’m gonna object and ask that she not—
“THE COURT: I will sustain the objection. Don’t answer the question. If he’s answered it, I’ll strike his answer from the record, please. Don’t consider it, ladies and gentlemen.”
Koppersmith argues, from Starr v. Starr, 293 Ala. 204, 301 So.2d 78 (1974), that the court’s refusal to allow the defendant to testify on direct examination as to his intent constituted reversible error.
In Starr, this Court abandoned the longstanding rule that “one can not prove by a witness on direct examination, his intent, motive, or other unexpressed mental operation.” 293 Ala. at 208, 301 So.2d at 81 (emphasis omitted). In Starr, the appellant argued that the trial court had erred in admitting the answer to the following question: “Is it your intention to carry out the plan of distribution of the family property that you and Mrs. Starr arrived at?” This Court considered the answer to that question important to the resolution of the case, because, it wrote, “[t]he existence of the plan for disposition of the spouse’s property runs through a *822 great part of this will contest.” 293 Ala. at 209, 301 So.2d at 82. The Court further noted that this testimony as to the witness’s intent to carry out the plan was the “only ... evidence” admitted that indicated that the plan would be carried out. 293 Ala. at 210, 301 So.2d at 82. The Court realized that under the old rule it would generally have to reverse in a ease like Starr, where a party’s answer to such a question had a significant impact on the opposing party’s case. However, after considering the rationale behind the rule, and reviewing the commentaries on it, the Court held:
“We therefore depart from the past and follow the dictates of conscience and the wisdom of noted writers and other members of this court. We now hold that a witness, on direct examination, may testify as to his intention, motive, or other physically unexpressed mental state, provided, that the testimony is material to the issues in the case.”
Starr, 293 Ala. at 210, 301 So.2d at 82-83 (emphasis in original).
In Koppersmith’s case, there is no doubt that the question asked of him called for testimony as to his intent. Therefore, the question becomes whether the answer would be “material to the issues in the case.” Starr. Considering the differing mental states required for the three crimes on which the circuit court instructed the jury, we must conclude that the testimony that was excluded would have been material to the main issue in the case: which, if any, of the three crimes on which the jury was instructed— murder, reckless manslaughter, or criminally negligent homicide — is the defendant guilty?
This Court explained the intricate distinctions between the three crimes, in the context of an accidental killing, in Weems v. State, 463 So.2d 170 (Ala.1984). This Court in Weems fully explained the differences between “depraved heart” murder under § 13A-6-2(a)(2), reckless manslaughter under § 13A-6-3(a)(1), and criminally negligent manslaughter under § 13A-6-4(a). Based on the comments to the Model Penal Code, from which our statutes were taken, we noted the following distinction between reckless manslaughter and criminally negligent manslaughter:
“The essential difference between ‘recklessness,’ as that term is used in the murder and manslaughter statutes, and ‘criminal negligence’ is that a reckless defendant is one who has ‘consciously disregarded’ a substantial and unjustifiable risk, whereas a negligent actor needs only to disregard a risk of which he ‘should have been aware.’ Model Penal Code and Commentaries, § 210.04, Comment 1.”
463 So.2d at 172.
The excluded testimony would have gone directly to the issue of whether Koppersmith was “consciously aware” of the substantial and unjustifiable risk associated with banging the victim’s head against the bricks, or whether this risk was just one of which the defendant should have been aware. It cannot be said that the defendant suffered no prejudice because, if admitted, the testimony could have resulted in his being convicted of a Class A misdemeanor (criminally negligent homicide), rather than a Class B felony (reckless manslaughter); the difference in sentence for the two crimes could be as much as 19 years of prison time.[1] Accordingly, we hold that the circuit court erred in excluding the defendant’s testimony concerning whether he intended to beat the victim’s head on the bricks.
Regardless, the State argues that the error caused by excluding the evidence of intent was harmless, relying on Rule 45, Ala. R.App.P. The State argues that the exclusion of this testimony was harmless for two related reasons: 1) the judge instructed the jury on murder, reckless manslaughter, and criminally negligent homicide, and 2) the jury returned a verdict of reckless manslaughter, thus, the State says, showing that the jury considered the evidence and found with the defendant that he did not have the intent to kill. Therefore, argues the State, the defendant has suffered no injury that would justify reversing the judgment.
*823 After reviewing the record, we cannot say that the error was harmless. We agree that the judge fully and thoroughly instructed the jury on the distinctions between the crimes, and that he especially focused on the kind of intent necessary for each of the crimes. The judge further clarified the distinction between criminally negligent homicide and reckless manslaughter, in answer to a juror’s question asked during deliberations. (C.R.-363-69.) However, the thoroughness of these instructions does not negate the error of excluding evidence that, if admitted, could have been taken into account by the jury when determining how the facts fit into the instructions given by the judge. Also, the fact that the jury returned a verdict of reckless manslaughter only reinforces the argument that the exclusion of the evidence was prejudicial error. Because the evidence of Koppersmith’s intent was excluded, the jury could have been led to believe that even if he in fact did not intend to strike the victim’s head on the bricks, that fact did not lessen his criminal culpability, when in truth the jury would have considered the negative answer to possibly reduce the mens rea from that of reckless manslaughter to that of criminally negligent homicide.
Finally, we note that the defendant was allowed to testify during redirect examination that he did not intend to kill his wife. On redirect examination, the following colloquy took place:
“Q. [Defendant’s counsel] When you grabbed Cindy from behind and slung her away, what was your intent?
“A. [Koppersmith] To get her to let go of my arm.
“Q. Did you mean to kill Cindy that night?
“A. No, I did not.”
Thus, in his final words to the jury, the defendant was allowed to state that he did not intend to kill his wife. However, these questions do not negate the error of excluding the one piece of testimony that was most relevant to the distinction between reckless manslaughter and criminally negligent homicide. The excluded question asks if Kop-persmith intended to beat his wife’s head on the bricks, while the final questions ask about whether Koppersmith intended to sling her off the porch and just generally whether he intended to kill her; these questions and the answers to them would tend to address the distinctions between murder and the other two charged offenses. Therefore, the excluded testimony would not have been cumulative as to the testimony later admitted.[2]
We note also that the defendant was allowed to testify that he jumped on the victim, shook her, and told her to calm down. (R.T. 243-44.) However, this testimony.was merely a recount of the act itself, and not a statement of the intent of the defendant in carrying out the act. Thus, the excluded testimony would not have been cumulative as to this later testimony.
The Court of Criminal Appeals, erred in affirming the judgment of conviction; that court’s judgment of affirmance is reversed. The cause is remanded for that court to order a new trial.
REVERSED AND REMANDED.
MADDOX, SHORES, HOUSTON, KENNEDY, and COOK, JJ., concur.
HOOPER, C.J., dissents.

. Under § 13A-5-6(a)(2), reckless manslaughter can be punished by imprisonment for not more than 20 years, and not less than one year. Criminally negligent homicide may be punished with a sentence of not more than one year’s imprisonment, under § 13 A — 5—7 (a)(1).

. The Court of Criminal Appeals has noted on numerous occasions that "[t]he exclusion of admissible evidence is not reversible error when it would have been merely cumulative of other evidence that was admitted.” Kolmetz v. State, 600 So.2d 389, 391-92 (Ala.Crim.App.1991), cert. denied, 600 So.2d 396 (Ala.1992) (citing Houston v. State, 565 So.2d 277 (Ala.Crim.App.1990)). This rule has no application here, because the testimony was not cumulative.