Gordon Lee Saylor was convicted of assault in the first degree, a violation of § 13A-6-20, Ala. Code 1975. He was sentenced under the Alabama Habitual Felony Offender Act (HFOA) to 25 years in prison.
The principal facts are as follows. Saylor and Angela Smith had been living together for five or six months. On January 25, 1997, Smith and Saylor argued and Smith left the house. When she returned a few hours later, at around one o'clock a.m., Saylor was not home. At around five o'clock a.m., Saylor *Page 267 
returned to the house with a friend. When Smith asked the friend to leave, Smith and Saylor argued again. Saylor accused Smith of having an affair. Smith testified that she pushed Saylor and that Saylor then hit her and blackened her eye.
Smith further testified that she heard Saylor ask his friend if he could borrow his truck so that he could kill Smith and dump her body. Smith also testified that Saylor told her he was going to kill her. At this point, Smith ran outside, got into the truck, and tried to lock its doors. She testified that Saylor followed, reached into the truck, and hit her again. Smith testified that Saylor then got in on the passenger side and cut her neck twice with a knife. Saylor testified that the cutting was accidental.
Saylor was indicted for attempted murder. The judge instructed the jury on attempted murder and on the lesser included offenses of assault in the first degree and assault in the second degree. The jury found Saylor guilty of assault in the first degree.
On appeal, Saylor challenges the sufficiency of the evidence to support his conviction. Specifically, he contends that the State failed to prove that Smith suffered "serious physical injury" and that, consequently, the trial court erred in instructing the jury on assault in the first degree.
In determining whether the trial court erred in charging the jury on assault in the first degree, we must consider the following definitions of assault and its elements, on which the jury was charged in this case:
 "(a) A person commits the crime of assault in the first degree if:
 "(1) With intent to cause serious physical injury to another person, he causes serious physical injury to any person by means of a deadly weapon or a dangerous instrument; or
 ". . .
 "(3) Under circumstances manifesting extreme indifference to the value of human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to any person. . . .
§ 13A-6-20(a), Ala. Code 1975.
 "Serious Physical Injury. Physical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."
§ 13A-1-2(9), Ala. Code 1975.
 "Dangerous Instrument. Any instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is highly capable of causing death or serious physical injury. . . ."
§ 13A-1-2(12), Ala. Code 1975.
The record reveals that Saylor did attack Smith with a deer skinning knife, which is clearly a deadly weapon. The record also reveals, however, that Smith did not suffer from "serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." § 13A-1-2(9), Ala. Code 1975. Smith was admitted into the hospital on January 25, 1997, and was discharged on January 26, 1997. Smith contends that she left the hospital after only one day because she could not afford to stay. However, the hospital records do not indicate that her injury required lengthier hospitalization. Upon her discharge, Smith was prescribed antibiotics and pain medication. No evidence was presented that Smith suffered from any long-term ill effects or physical impairment from her injury, other than Smith's bare statement that she "still [had] problems from where [she] did get stabbed." (R. 129.) Compare Haslerig v. State,474 So.2d 196, 197-198 (Ala.Cr.App. 1985) (serious physical injury found where the assault victim testified extensively as to the nature and effect of his injuries).
In Hale v. State, 654 So.2d 83 (Ala.Cr.App. 1994), hospital records showed that the victim was shot twice, remained in intensive care for 13 or 14 days, and had a drainage tube in his chest during most of his hospitalization. His lungs had collapsed at least once. Although the injuries the victim sustained *Page 268 
were much more severe than those inflicted on the victim in the present case, this court found that although the injury inHale met the stringent definition of serious physical injury, it did so "only minimally." 654 So.2d at 85. This holding was mandated because no physician testified regarding the nature and extent of the victim's wounds and because the victim's testimony did not address the pain and suffering or physical impairment resulting from the injury.
Likewise, in this case, no medical expert testified and Smith's testimony regarding her injury was scant. Smith described her injury merely as being "cut." She then briefly described the angiogram procedure she underwent, a test that revealed that there was no internal bleeding. Smith also made the statements that "[Saylor] missed [her] main artery by barely a hair" and that she "still [had] problems from where [she] did get stabbed." This evidence falls short of showing that Smith suffered from "serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." § 13A-1-2(9), Ala. Code 1975.
Evidence of "substantial risk of death," as that term is used in § 13A-1-2(9), was also lacking. The fact that there could have been complications from an injury is not enough. See Vov. State, 612 So.2d 1323 (Ala.Cr.App. 1992). While "serious physical injury" does not require that death be likely, it does require a "real hazard or danger of death." Ware v.State, 584 So.2d 939, 941 (Ala.Cr.App. 1991). See alsoWilson v. State, 695 So.2d 195 (Ala.Cr.App. 1996) (no serious physical injury found where the victim suffered a hairline fracture of the sinus cavity and a wound above the eye, even though physician testified that "it is conceivable that a potentially fatal injury might occur" from slamming a person's head into concrete).
The evidence in this case is insufficient to establish that there was a real hazard or danger that Smith might die from her injuries. Although Smith testified that one of the stab wounds "missed [her] main artery by barely a hair," the angiogram performed during her brief hospital stay revealed that there was no damage to the artery. No medical expert testified that Smith's injuries were life threatening. Compare Ware v.State, 584 So.2d 939, 941 (Ala.Cr.App. 1991) (serious physical injury found where a physician testified that he initially "felt like there were potentially life threatening injuries," and that although tests enabled him to rule out "immediate life threatening [injuries]," he did not rule out "delayed life threatening [injuries]"); Rothchild v.State, 558 So.2d 981, 983 (Ala.Cr.App. 1989) (serious physical injury found where two physicians testified "that had the victim not received treatment she quite possibly could have died").
Smith's hospital record does not support a finding that her injuries created a substantial risk of death. Smith's hospital record characterizes Smith's injuries as "two stab wounds, skin bleeder, no deep bleeding or hematoma" with "no air escaping." The record notes active bleeding on admission to the hospital, but states that Smith was "hemodynamically stable" and exhibited no shortness of breath. It also documents that there was no evidence of internal bleeding or of any damage to veins, arteries, or organs, and no evidence of esophageal laceration. The hospital record described Smith's stay as "uneventful" and she was discharged in "satisfactory condition" the day after she was admitted.
The State asks this court to rely on Anderson v.State, 686 So.2d 381 (Ala. 1996), in which the Alabama Supreme Court noted that a deep puncture knife wound to the thigh could meet the statutory definition of serious physical injury. 686 So.2d at 384-85. Anderson, however, is distinguishable from this case. In Anderson, the victim suffered not only from a deep puncture knife wound, but also from a burst eardrum, a fractured rib, trauma to the head, and various bruises and scrapes. 686 So.2d at 383. Furthermore, inAnderson, a medical expert characterized some of the victim's injuries as "severe." Id. at 385. In contrast, in this case, no medical expert testified and no evidence was presented that Smith's "cut" was even a deep puncture. Thus, the present case is distinguishable from Anderson. *Page 269 
Section 13A-1-9(b), Ala. Code 1975, provides:
 "(b) The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."
Whether Smith suffered "serious physical injury," as that term is defined in § 13A-1-2(9), determines whether the jury should have been instructed on assault in the first degree as a lesser included offense to the offense of attempted murder. "`Serious physical injury' is `[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.' Ala. Code 1975, § 13A-1-2(9)." Davis v.State, 467 So.2d 265, 266 (Ala.Cr.App. 1985). There was not a factual basis to support the presentation to the jury of the charge of assault in the first degree. In light of the above, we must reverse Saylor's conviction for assault in the first degree because the State failed to prove that the injuries Smith suffered caused a substantial risk of death, or caused serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ.
As the State argued in its brief, the State's evidence does support a conviction for assault in the second degree. Section 13A-6-21 defines assault in the second degree as follows:
 "(a) A person commits the crime of assault in the second degree if. . . .:
 "(2) with intent to cause physical injury to another person, he or she causes physical injury to any person by means of a deadly weapon or dangerous instrument."
§ 13A-6-21(a)(2), Ala. Code 1975. "Physical injury," as that term is used in § 13A-6-21, is the "impairment of physical condition or substantial pain." § 13A-1-2(8), Ala. Code 1975. The victim's injury in this case was a "physical injury." The trial court correctly instructed the jury on assault in the second degree, and the evidence was sufficient to support a conviction for this offense. See Vo v. State,612 So.2d 1323 (Ala.Cr.App. 1992); Nelson v. State, 462 So.2d 962
(Ala.Cr.App. 1984).
Therefore, Saylor's conviction for first-degree assault must be reversed. Because there was sufficient evidence to find Saylor guilty of second-degree assault, this cause is remanded to the circuit court, in accordance with Ex parte Edwards,452 So.2d 508 (Ala. 1984), with directions that Saylor's first-degree assault conviction be set aside and that Saylor be properly adjudged guilty of, and sentenced for, the offense of second-degree assault.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the Judges concur.